# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **EDWARD LONGMIRE,** | |
| Plaintiff, | |
| v. | No. 16 C 10160 |
| **NANCY A. BERRYHILL, Acting Commissioner of Social Security,**[1] | Magistrate Judge Mary M. Rowland |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Edward Longmire filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income (SSI) under Title XVI the Social Security Act (Act). 42 U.S.C. §§ 405(g), 1381 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover SSI, a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp. 2d 973, 977 (N.D. Ill. 2001).[2] A

---

[1] On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security and is substituted for her predecessor as the proper defendant in this action. Fed. R. Civ. P. 25(d).

[2] The regulations governing the determination of disability for SSI are found at 20 C.F.R. § 416.901 et seq. The standard for determining SSI is virtually identical to that used for Disability

person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

Insurance Benefits (DIB). *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

Plaintiff applied for SSI benefits on August 1, 2011, alleging that he became disabled on January 1, 1997, due to affective disorders, mood disorders, and asthma. (R. at 49).[3] The application was denied initially on October 20, 2011, and upon reconsideration on April 6, 2012, after which Plaintiff filed a timely request for a hearing. (*Id.* at 49-50, 66). On July 12, 2013, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 29–48). The hearing was held by video with Plaintiff located at the Hill Correctional Institution and his attorney was present at the hearing. (*Id.* at 18). The ALJ also heard testimony from Aimee Mowery, a vocational expert (VE). (*Id.* at 29–48).

The ALJ denied Plaintiff's request for benefits on August 6, 2013. (R. at 18–25). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff did not engage in substantial gainful activity since August 1, 2011, the application date. (*Id.* at 20). At step two, the ALJ found that Plaintiff's depression, asthma, anxiety, post-traumatic stress disorder, and anti-social personality disorder were severe impairments. (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulations. (*Id.*).

---

[3] According to SSI regulations, Plaintiff is only eligible for benefits for the time period in which he was not incarcerated, in this case from August 1, 2011 to April 24, 2012. *See* 20 C.F.R. § 416.1325.

3

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[4] and determined that Plaintiff could perform the full range of work at all exertional levels except Plaintiff was limited to "1, 2, and 3-step job tasks; no contact with the general public; no fast-paced production jobs; must avoid concentrated exposure to pulmonary irritants; and no reading or writing requirements." (R. at 21). At step four, the ALJ noted that Plaintiff has no past relevant work. (*Id.* at 23). Based on Plaintiff's RFC, age, education, and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including hand packager, sorter, and kitchen helper. (*Id.* at 24). The ALJ indicated that "[t]hese would be reduced by 50% due to no reading and writing. However, the [VE] testified that she has placed individuals who speak no English and cannot read or write in these positions." (*Id.*) Accordingly, the ALJ concluded that Plaintiff is not under a disability, as defined by the Act. (*Id.* at 26–27).

The Appeals Council denied Plaintiff's request for review on August 26, 2016. (R. at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue,* 556 F.3d 558, 561–62 (7th Cir. 2009).

---

[4] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675–76.

## III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin,* 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is

weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. DISCUSSION

In support for his request for reversal, Plaintiff argues that the ALJ (1) failed to consider the line of evidence documenting Plaintiff's auditory hallucinations when formulating the RFC; (2) failed to properly assess Plaintiff's mental RFC; (3) mischaracterized the medical evidence; and (4) erred in accepting the VE's testimony regarding literacy. (Dkt. 13 at 9).

**A. The ALJ's RFC Determination**

The ALJ determined that Plaintiff's asthma, depression, anxiety, post-traumatic stress disorder, and anti-social personality disorder were severe impairments. (R. at 20). After examining the medical evidence and giving partial credibility to some of Plaintiff's subjective complaints, the ALJ found that Plaintiff has the RFC to perform the full range of work at all exertional levels except Plaintiff was limited to "1, 2, and 3-step job tasks; no contact with the general public; no fast-paced production jobs; must avoid concentrated exposure to pulmonary irritants; and no reading or writing requirements." (*Id.* at 21). Plaintiff contends that the ALJ erred

6

in this determination by ignoring a line of evidence related to Plaintiff's auditory hallucinations. (Pl.'s Mem., Dkt. 13 at 10). The Court agrees.

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000; see 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, at *2[5] ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. *Craft*, 539 F.3d at 676. In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano*, 556 F.3d at 563; *see* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); SSR 96-8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

---

[5]   SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). Although the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

In support of his RFC determination, the ALJ explains:

> In sum, the above [RFC] assessment is supported by the minimal objective findings, the lack of continuity of treatment, and the claimant's testimony. . . . There is no medical evidence to support the degree of mental limitations alleged by the claimant. The record does not reveal continuing treatment, or any recommendations from any treating source of the claimant's limitations either exertionally or nonexertionally. Examinations have been generally normal and there is nothing to support the claimant's alleged limitations.

(R. at 23). There are flaws in the ALJ's reasoning. First, contrary to the ALJ's assertion, there are records to support the mental limitations alleged by the claimant which the ALJ does not address in his decision. For instance, during his incarceration in 2010, Plaintiff was seen by a psychiatrist approximately every four weeks from May through October. (*Id.* at 333, 335–36, 339–40, 342). Plaintiff was diagnosed by his psychiatrist with major depressive disorder with psychotic features and prescribed antidepressant and antipsychotic medications. (*Id.*). The ALJ similarly erred when stating that "the record does not reveal continuing treatment." (*Id.* at 23). Again, the ALJ failed to mention treatment records during Plaintiff's multiple incarcerations that indicate continued psychiatric treatment with psychotropic medications. (*Id.* at 300-33, 335–36, 339–40, 342).

While the ALJ found that Plaintiff's depression was a severe impairment, (R. 20), he erred by making no mention of record evidence indicating the presence of psychotic features associated with Plaintiff's depression. Defendant asserts that "[h]allucinations are a symptom that must be caused by an underlying medically determinable impairment, yet [Plaintiff] has not pointed to medical evidence of this

8

impairment, even if there are some stray diagnoses in the record." (Def.'s Mem., Dkt 16 at 4). This argument is unavailing. Rather than "stray diagnoses in the record," Plaintiff points to record evidence of an underlying impairment of major depressive disorder with psychotic features, including diagnoses by a psychiatrist, at least five treatment notes indicating the presence of psychotic features, and treatment with antipsychotic medications. (*Id.* at 322, 333, 335–36, 339–40, 342). By not addressing this evidence in his decision, the ALJ failed to "build an accurate and logical bridge from the evidence to her conclusion." *Steele*, 290 F. 3d at 941 (internal quotation omitted). This prevents the Court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595.

Defendant's next argument is similarly without traction. Defendant contends that "the complaints of hallucinations [ ] pre-date August 2011, and thus, on their face, have little bearing on his claim." (Def.'s Mem., Dkt. 16 at 4). However, the ALJ must consider all relevant evidence, even that evidence that predates the earliest disability date or postdates the date last insured. *See Parker v. Astrue,* 597 F.3d 920, 925 (7th Cir. 2010). This is especially true in cases involving individuals with mental illness where the Seventh Circuit has repeatedly cautioned ALJ's to look at the record as a whole for a longitudinal perspective. *See Punzio v. Astrue*, 630 F.3d 704, 710-11 (7th Cir. 2011). Moreover, Plaintiff reported psychotic symptoms to both consultative examiners in September 2011, during the time period where he was not incarcerated and thus eligible for SSI. (R. 368, 371).

Accordingly, the Court finds that the ALJ erred by failing to address a line of evidence regarding psychotic symptoms when assessing Plaintiff's RFC. *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted) ("In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling.").

**B. Other Issues**

Because the Court is remanding on the ALJ's RFC assessment, the Court chooses not to address Plaintiff's other arguments. On remand, the ALJ shall reassess Plaintiff's RFC by "evaluating all limitations that arise from medically determinable impairments, even those that are not severe." *Villano*, 556 F. 3d at 563. The RFC shall be "expressed in terms of work-related functions" and include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. SSR 96-8p. Finally, with the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

## V. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment (Dkt. 12) is granted. Defendant's Motion for Summary Judgment (Dkt. 15) is denied. Pursuant to sentence four of 42 U.S.C. § 405, the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Dated: December 19, 2017                E N T E R:

_Mary M Rowland_
MARY M. ROWLAND
United States Magistrate Judge